Turner Advertising of Kentucky, Inc. v. Commissioner.
Turner Advertising of Kentucky, Inc. v. Commissioner
Docket No. 6032-64.
United States Tax Court
T.C. Memo 1966-101; 1966 Tax Ct. Memo LEXIS 182; 25 T.C.M. (CCH) 532; T.C.M. (RIA) 66101; May 17, 1966
William R. Seaman, Central Trust Tower, Cincinnati, Ohio, and Ronald E. Heinlen, for the petitioner. W. Dean Short, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable year ending September 30, 1961 in the amount of $6,744.80. The issues are (1) whether respondent correctly determined the basis of certain advertising panels owned by petitioner for the purpose of computing allowable depreciation under section 167 of the Internal Revenue Code *185 of 1954, [1] and (2) whether petitioner is entitled to an interest deduction under section 163 for amounts accrued on certain purported notes issued by petitioner to two of its stockholders. Findings of Fact Some of the facts were stipulated and they are so found. Petitioner Turner Advertising of Kentucky, Inc. is a Kentucky corporation which was incorporated on May 12, 1961 to operate an outdoor advertising business in the metropolitan areas of Covington, Kentucky and Cincinnati, Ohio, with its principal place of business in Kenton County, Kentucky. Petitioner kept its books and records and filed its tax returns using an accrual method of accounting. Petitioner filed its corporation income tax return for its taxable year ending September 30, 1961 with the district director of internal revenue, Louisville, Kentucky. Turner Advertising, Inc., an Ohio corporation (hereinafter called Turner Advertising of Ohio), was incorporated on January 24, 1955 to operate an outdoor advertising business in the metropolitan areas of Covington, Kentucky and Cincinnati, Ohio. This outdoor *186 advertising business had previously been operated by R. E. Turner and Raymond W. Fehr as a partnership (Turner Advertising Company) for approximately eight to ten years. Turner Advertising of Ohio took over the entire business operated by the partnership except for certain real estate which was rented to Turner Advertising of Ohio and, subsequently, to petitioner. R. E. Turner started in the outdoor advertising business in 1937 in Cincinnati, Ohio, and about two years later Raymond W. Fehr began to work for Turner. By 1961 Turner had acquired, in addition to the business in Cincinnati, Ohio and in Covington, Kentucky, an interest (either in whole or in part) in outdoor advertising interests in Savannah, Georgia, Columbus, 1960 or 1961 Turner learned that various outdoor advertising plants owned by the General Outdoor Advertising Co. would become available and he indicated he was interested in acquiring those advertising plants which were located in certain southern states. In September 1962 Turner purchaser the outdoor advertising plants in Atlanta, Georgia, Richmond, Virginia and Roanoke, Virginia for $4,070,000, paying $730,000 in cash and the balance payable in installments over *187 a period of eight years with interest at 6 percent. Turner borrowed $320,000 from a bank to meet the cash down payment and pledged as security certain notes he had received from the sale of his interests in his Charleston, South Carolina (September 1961) and Savannah, Georgia (July 1962) operations. Turner Advertising of Ohio acquired the business operated by the partnership for $458,925.27, with $54,904.56 paid in cash and by the assumption of liabilities, and the balance payable over a period of 20 years with interest at 4 percent on the unpaid balance. Both Turner and Fehr reported their gains realized from this sale on the installment basis, and Turner Advertising of Ohio stepped up the basis of the advertising structures it acquired to reflect the purchase price paid. Turner and Fehr were president and vice-president, respectively, of Turner Advertising of Ohio from its incorporation until June 1, 1961, and on the latter date Turner owned 79 shares while Fehr owned 21 shares of the 100 shares of Turner Advertising of Ohio issued and outstanding. Turner Advertising of Ohio did not pay any dividends during its corporate existence. The balance sheets of Turner Advertising of *188 Ohio indicate that it had a surplus deficit in each of its fiscal years ended February 28 (or 29), 1956 through 1960. Its profit and loss statements show a net loss from operations in the fiscal years ended February 28 (or 29), 1956 through 1958 and a net profit from operations in its fiscal years ended February 28 (or 29), 1959 through 1961. When petitioner was incorporated on May 12, 1961 it issued 510 shares of common stock with a par value of $100 per share to the following: Stockholder
Shares
Issued
R. E. Turner - president of petitioner
200
5/13/61
Raymond W. Fehr - vice-president of petitioner
50
5/13/61
Estelle Ireland - manager, Turner Advertising Co. (Georgia)
30
5/13/61
N. A. Terry, Jr. - manager, Turner Advertising Co. (South Carolina)
50
5/29/61
Hudson Edwards - salesman, Turner Advertising Co. (South Caro-
lina)
50
5/29/61
James E. Hogan - salesman, Turner Advertising Co. (Georgia)
50
5/13/61
Gay Dorrah - bookkeeper of petitioner and Turner Advertising
of Ohio
10
5/29/61
Richard Lamy - painter, Turner Advertising Co. (Georgia)
30
5/29/
Irwin Mazo - partner in accounting firm which served as inde-61
pendent auditors for petitioner and other Turner companies
40
5/29/61
*189 Estelle Ireland sold her stock to a friend of R. E. Turner in June 1961 when she resigned from the Turner Advertising Co. (Georgia). She received in payment for the stock her original purchase price plus interest she had paid on a loan obtained by her to purchase the stock. Irwin Mazo transferred his stock to his brother in 1964. Richard Lamy sold his stock in 1965 in a transaction arranged by Irwin Mazo. Lamy received in payment for the stock his original purchase price plus some interest he had paid on a loan obtained by him to purchase the stock. Petitioner's bylaws, adopted at the first meeting of shareholders, provided, in part, as follows: Section 3. Limitation on sale of shares. If and when any shareholder desires, or on the happening of any event is required, to sell his shares or any part thereof, the corporation, subject to any applicable provision of law, shall have a preemptive right to purchase the same for resale to shareholders or others. Any shareholder so desiring or required to sell his shares or any part thereof shall give to the corporation written notice of such desire or requirement to sell, and if the exercise of such preemptive right be authorized by the *190 board of directors of the corporation, such right shall and may be exercised by the corporation within ten days after receipt of such notice. If the corporation shall not exercise such preemptive right, as aforesaid, after the expiration of said ten days any shareholder of the corporation, within five days after the expiration of said ten days, shall have, and may exercise, such preemptive right. But if not so exercised, as aforesaid, either by the corporation or by another shareholder, such preemptive right shall be null and void after the expiration of fifteen days after receipt of such notice by the corporation. The price and terms of such purchase by the corporation or by a shareholder shall be as follows: The price shall be the book value of said shares as determined by the books of account of the corporation and such price shall be payable in cash upon the exercise of such preemptive right and the delivery of the certificate or certificates for such shares, properly endorsed for transfer. The aforesaid limitation on the sale of shares of the corporation, or a summary thereof and reference to this section of the bylaws, shall be stated on all certificates for shares of this corporation. *191 A much similar stock sale limitation had been contained in Article Tenth of Turner Advertising of Ohio. On June 1, 1961 R. E. Turner and Raymond W. Fehr transferred all of the outstanding shares in Turner Advertising of Ohio to petitioner, and petitioner agreed to pay $400,000 for such shares, with $20,000 to be paid in cash ($15,800 to Turner and $4,200 to Fehr) and the balance in negotiable promissory notes ($300,200 to Turner and $79,800 to Fehr) maturing in 10 annual installments with interest at 5 percent. Pursuant to a resolution adopted at a special meeting of petitioner's board of directors on June 1, 1961 petitioner dissolved Turner Advertising of Ohio and, as sole shareholder, acquired all of the assets of Turner Advertising of Ohio and assumed all of its liabilities. These assets consisted, for the most part, of about 80 paint panels and about 190 poster panels used in outdoor advertising. [2]
*192 The balance sheet of Turner Advertising of Ohio as of June 1, 1961 as shown on its Assets
Amount
Cash
$ 11,326.03
Notes and Accounts Re-
ceivable
24,580.75
Inventories
6,841.30
Prepaid Expenses
14,430.88
Depreciable assets
$238,019.09 *
Less Reserve for De-
preciation
153,309.96
84,709.13
Land
2,450.00
$144,338.09
Liabilities and capital
Accounts payable
$ 1,407.27
Accrued expenses
2,968.85
Notes payable
120,000.00
Accrued taxes
609.14
Common stock
10,000.00
Earned surplus
9,352.83
$144,338.09
As stipulated in Joint Exhibit 8-H, petitioner's books and records as of June 1, 1961 showed the paint panels acquired from Turner Advertising of Ohio in the amount of $240,000 and the Petitioner's balance sheet as of June 1, 1961 (as shown in its first poster panels in the amount of $217,200, or a total of $457,200. corporation income tax return for the taxable period May 12 to September 30, 1961) is as follows: Assets
Cash
$ 42,326.03
Accounts Receivable
23,349.61
Loans to Employees
1,231.14
Inventory
6,841.30
Depreciable Assets (Net)
464,968.14
Prepaid Lease Rents
11,658.65
Other Prepaid Expenses
2,772.23
Land
2,838.16
$555,985.26
Liabilities and Capital
Accounts Payable
$ 1,407.27
Accrued Expenses
1,045.15
Accrued Taxes Payable
2,532.84
Notes Payable
500,000.00
Capital Stock
51,000.00
$555,985.26
*193 R. E. Turner and Raymond W. Fehr reported capital gains realized from the transfer of their stock in Turner Advertising of Ohio to petitioner on their 1961 tax returns and elected to report such capital gains on the installment method. Petitioner, after dissolving Turner Advertising of Ohio and acquiring its assets and liabilities, carried on the outdoor advertising business with the same assets, the same office in Covington, Kentucky, and same employees, and the same customers Georgia, Macon, Georgia and Charleston, South Carolina. In except as changes occurred in the regular course of business, and the same leased properties. Petitioner did not show a profit from operations for the taxable years ended September 30, 1961 through 1964. R. E. Turner continued as president of petitioner from the date of its incorporation until his death on March 5, 1963. Raymond W. Fehr, who was vice-president of petitioner from its incorporation, became president after Turner's death. Petitioner, in its corporation tax returns for the taxable period from May 12 to September 30, 1961, claimed a depreciation deduction of $8,651.50 for the poster panels and $9,521.98 for the paint panels, using straight-line *194 depreciation and a life of eight and one-third years. Respondent in his notice of deficiency allowed depreciation for poster panels and paint panels in the respective amounts of $3,964.71 and $4,745.54 and disallowed the remaining amounts deducted by petitioner. During the taxable period ending September 30, 1961 petitioner accrued interest in the amount of $6,333.36 on the promissory notes held by R. E. Turner and Raymond W. Fehr, which amount was paid by petitioner to Turner and Fehr in the calendar year 1962. Respondent in his notice of deficiency determined that the amount of $6,333.36 "does not qualify as an allowable deduction as interest under section 162 or 163 of the Internal Revenue Code since it does not represent interest paid or accrued on a valid indebtedness." Opinion Petitioner contends that section 334(b)(2) [3] is applicable here and that its basis in the advertising structures it acquired when it liquidated Turner Advertising of Ohio is the same as its (petitioner's) adjusted basis in the stock of that corporation which it purchased from Turner and Fehr. Respondent, on the other hand, contends that the various steps taken by the parties *195 represent a reorganization under subsections 368(a)(1)(D), (E) or (F) [4] and, consequently that petitioner's basis in the advertising structures should be the same as the adjusted basis of these assets on the books of Turner Advertising of Ohio. Respondent does not dispute on brief that section 334(b)(2) will apply in the event we find that the transaction was not a reorganization under section 368(a)(1) and was not otherwise lacking in economic substance. *196 Even if we were to view the various steps taken by the parties as an integrated transaction, we could not agree with respondent's contention that the transaction fits within the mold of a statutory reorganization. The statute is explicit as to the requirements for the several kinds of reorganizations. In order to constitute a subsection (D) reorganization, the stockholders of the old corporation must be "in control" of the new corporation to which the assets are transferred, and "control" is defined in section 368(c) as at least 80 percent of the stock of the new corporation. It is clear that the requisite control is missing here. Turner and Fehr owned all of the stock in the old corporation (Turner Advertising of Ohio), but they only owned a total of 250 shares out of a total of 510 shares of outstanding stock of petitioner, considerably less than the requisite 80 percent. We see no reason to accede to respondent's urgings on brief that, for the purpose of determining whether a reorganization occurred, the "sale of [petitioner's] stock to persons other than Turner and Fehr should be disregarded as an unrelated transaction." Respondent made the same argument in a similar context *197 in Joseph C. Gallagher, 39 T.C. 144, and we rejected the argument, stating that "in such a situation as this, we cannot justify the inclusion of some and the exclusion of other essential steps." There is no persuasive reason in the record for disregarding the issuance of more than 50 percent of petitioner's stock to persons other than Turner and Fehr. Certainly, these purchases of 260 shares of petitioner's stock at $100 per share by seven individuals were bona fide. The total amount of the purchase price, or $26,000, was actually paid to petitioner. The fact that these other stockholders were employees of various Turner enterprises (one of the stockholders was a public accountant for Turner enterprises) cannot by itself detract from the bona fides of the stock purchases. In fact, it would seem that, in closely held companies of this type, sales of stock to employees and acquaintances would be the natural practice. Nor do we believe that the bona fides of these stock purchases are in any way vitiated by the limitations on sales of shares which appear in petitioner's bylaws. It is of some significance, we believe, that these limitations did not deter the seven stockholders *198 from investing $26,000 in petitioner in return for approximately 51 percent of its stock. The presence of the stock sale limitation provision in the bylaws did not increase the power or authority of Turner and Fehr or in any way dilute the controlling stock interest of the remaining stockholders. It follows, therefore, that the absence of 80 percent control of petitioner by the stockholders of the old corporation (Turner Advertising of Ohio) prevents this transaction from qualifying as a statutory reorganization under subsection 368(a)(1)(D). Moreover, with the substantial shift in the proprietary interest of the two corporations which occurred here, "[there] was not that reshuffling of a capital structure within the framework of an existing corporation contemplated by the term 'reorganization'" as now described in subsection (E). Helvering v. Southwest Consol. Corp., 315 U.S. 194; nor could such a shift in proprietary interest be regarded as a "mere change in identity, form, or place of organization" within the meaning of the reorganization described in subsection (F). Joseph C. Gallagher, supra. Respondent argues that even if the transaction did *199 not qualify as a reorganization under section 368(a)(1), the fair market value of the advertising structures is only equal to their adjusted basis on the books and records of Turner Advertising of Ohio and that, consequently, the purchase price paid by petitioner for the stock of Turner Advertising of Ohio, to the extent that such purchase price exceeds the adjusted basis of the advertising structures, should be allocated to intangible assets, such as good will and lease contracts, which were acquired by petitioner from Turner Advertising of Ohio at the same time. We do not agree. It appears that respondent's only determination was that the petitioner continued the adjusted basis of the Ohio corporation, and that such determination could only be justified by treating the transaction in which petitioner acquired these assets either as a reorganization or as a sham. We have rejected these arguments and have found that petitioner acquired these assets through a bona fide purchase. Respondent, however, clings to his position that the fair market value of the assets in petitioner's hands is governed by their adjusted book value on the seller's books. Under these circumstances it would *200 seem extremely doubtful that any presumption of correctness continues to attach itself to respondent's original determination as to value. In any event, respondent not only has failed to introduce any evidence whatever as to the fair market value of the advertising structures apart from his bizarre suggestion that the depreciated basis of these advertising structures (many of which were acquired in 1955) was somehow equivalent to their fair market value in 1961, but petitioner has introduced convincing evidence as to fair market value supporting the basis adopted on its books ($457,200) for the advertising structures. Raymond W. Fehr, who was the manager of Turner Advertising of Ohio since 1955 and was also the manager of petitioner, [5] has been in the outdoor advertising business for about 26 years. He testified that in May 1961, just prior to the sale of the stock in Turner Advertising of Ohio to petitioner, he personally inspected all of the advertising structures then owned by Turner Advertising of Ohio and determined that the fair market value of these assets was $457,200. In making this evaluation he took into consideration such factors as the physical condition of the structures, *201 their location, and the nature of the underlying leases. Another witness for petitioner who had long experience with various Turner enterprises in the outdoor advertising business also testified that the fair market value of the advertising structures when they were acquired by petitioner in June 1961 was $457,200. Based on this record, and in view of respondent's failure to introduce any evidence as to fair market value, we believe the evidence fairly supports petitioner's contention that the fair market value of the advertising structures it acquired in June 1961 was $457,200. We sustain petitioner's contention that its acquisition of the advertising structures from Turner Advertising of Ohio was a transaction falling under section 334(b)(2) and that the adjusted basis of such assets should be determined under the provisions of that statutory section. When Turner and Fehr, who owned all of the outstanding stock in Turner Advertising of Ohio (79 shares and 21 shares, respectively), sold their stock to petitioner on June 1, 1961, petitioner agreed to pay $400,000 for such stock, with $20,000 *202 to be paid in cash and the balance in promissory notes maturing in 10 annual installments with interest at 5 percent. Respondent disallowed an interest deduction claimed by petitioner in connection with these notes for its taxable period ending September 30, 1961 on the ground that it did not represent interest paid or accrued on a valid indebtedness. Respondent argues that the interest paid by petitioner to Turner and Fehr on these notes represent "boot" received in connection with a statutory reorganization within the meaning of section 356(a). We have held above that the various steps taken by the parties did not qualify as a statutory reorganization under section 368(a)(1), which eliminates this particular argument on the interest deduction issue. Nor is there any merit in respondent's contention that the notes were lacking in economic substance. We fail to understand how these negotiable promissory notes, with interest at 5 percent, in the total amount of $380,000, received in a bona fide sale of stock in a corporation with assets exceeding $500,000 in value, can be blithely dismissed as a sham. There can be no doubt, under the record, that the various steps taken by the parties *203 were bona fide, with meaningful economic consequences to all of the parties concerned. [6] We are presented with no convincing reason to disregard the transactions of the parties, including the notes which here formed an integral part of such transaction as a sham lacking in economic substance. *204 Finally, respondent appears to be making an argument that these notes represent an equity investment rather than a true corporate indebtedness. The question is one of fact. We have considered the various criteria which are pertinent, O. H. Kruse Grain & Milling Co. v. Commissioner, 279 F. 2d 123, and we find, after considering all of the facts and applying the various criteria, that the notes given by petitioner to Turner and Fehr in part payment of their stock in Turner Advertising of Ohio represented a valid corporate indebtedness. Among several signficant factors, we mention the following: The instruments were negotiable promissory notes, with fixed maturity dates, bearing a fixed rate of interest; the notes were not subordinated to the claims of other creditors; both principal and interest were payable without regard to petitioner's earnings, and in fact, the periodic payments were actually made in accordance with the terms of the instruments; the notes were not held in proportion to the stock interest by Turner and Fehr in petitioner (less than 50 percent); the initial capitalization of petitioner ($51,000) does not appear inadequate in view of the nature of petitioner's *205 operations, and the ratio of petitioner's indebtedness to equity is not abnormal. Finally, we note that valid business reasons existed for the issuance of the notes to Turner and Fehr. We find that the notes were a valid corporate indebtedness and that the petitioner was entitled to a deduction under section 163 for the interest it accrued on such notes in its taxable period ended September 30, 1961. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. A poster panel is about 12 feet high and 25 feet wide. The advertising material is on sheets of paper, furnished by the advertiser, which are pasted on the face of the panel. Paint panels vary in size and are generally larger than poster panels. The advertising message is painted directly on the panel.↩
*. The bulk of this asset represented advertising structures, i.e., both paint panels and poster panels.↩
3. Section 332 provides that no gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation. When this occurs, section 334(b)(1) provides that the basis of the property in the hands of the distributee shall be the same as it would be in the hands of the transferor. However, section 334(b)(2) carves out an exception to this basis rule, and provides that, under certain stated circumstances, the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made. ↩
4. SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS. (a) Reorganization. - (1) In general. - For purposes of parts I and II and this part, the term "reorganization" means - * * *
(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356., (E) a recapitalization; or (F) a mere change in identity, form, or place of organization, however effected. * * *
(c) Control. - For purposes of part I (other than section 304), part II, and this part, the term "control" means the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation.↩
5. Fehr became president of petitioner shortly after R. E. Turner died in March 1963.↩
6. The steps taken by the various parties were essentially as follows: (1) On May 12, 1961 petitioner was formed by Turner and Fehr who received 200 shares and 50 shares of stock, respectively, of petitioner's stock, with the remaining 260 shares of stock going to several individuals associated with or employed by various Turner enterprises; (2) on June 1, 1961 Turner and Fehr, who owned all of the outstanding stock in Turner Advertising of Ohio (79 shares and 21 shares, respectively) transferred all of such shares of stock to petitioner, and petitioner agreed to pay $400,000 for such stock, with $20,000 to be paid in cash and the balance in promissory notes maturing in 10 annual installments with interest at 5 percent; and (3) on the same date (June 1, 1961) petitioner liquidated Turner Advertising of Ohio and acquired all of its assets, i.e., principally the advertising structures, and continued to operate the outdoor advertising business.↩